At about the hour of eight A.M., December 9, 1943, on a narrow concrete bridge some two miles west of the City of Minden, in Webster Parish, Louisiana, plaintiff was injured seriously in a collision between his one and one-half ton tractor, with van trailer attached, and the three ton tractor, with tank trailer attached, of the defendant, Earl Gibbon. The bridge is 98 feet long and is 18 feet between railings. Each of the units measured 38 feet in length and 8 feet in width.
Plaintiff was driving his own unit and was traveling easterly; defendant's unit, driven by one of his employees, was going westerly. The left fender of the two tractors violently contacted. The left part of plaintiff's tractor, including left side of hood, the grill, cowl, running board and door, were, according to photograph in the record, badly damaged. The drive shaft was disengaged from its rear connection, but, strange as it may seem, not one of the tires of either unit was deflated. The left front corner of the van was also damaged to some extent.
The full extent of damage to the Gibbon unit is not shown. If photographs of it were taken they were not offered in evidence. Both units had to be winched from the scene of the accident. It is shown, however, that the drive shaft of the Gibbon unit was so badly damaged that it also would not function.
As the drive shaft of each unit was rendered impotent from the collision, it is certain the distance traveled by either or both after the accident may be accredited solely to momentum.
Following the collision plaintiff's unit rested at the east end of the bridge with all the van and two or three feet of the tractor resting thereon. The Gibbon tank rested on the west end of the bridge with tractor off of it and pointing slightly southwest. *Page 745 
Plaintiff sues Earl Gibbon and his insurer, The Fidelity and Casualty Company of New York, to recover a large amount in damages allegedly sustained by him as a result of the accident, and for the value of his tractor and trailer, alleged to have been virtually destroyed.
For a cause of action, plaintiff alleges that he approached the narrow bridge at a speed not in excess of thirty miles per hour and entered thereon at a speed of about twenty miles per hour; that when he had traversed approximately one-half of the length of the bridge, defendant's unit approached it from the east at a speed of from forty-five to fifty miles per hour; that the driver thereof, realizing that it would be dangerous, if not impossible, to pass plaintiff's unit then on the bridge, applied the brakes and changed his course from the middle of the highway to his extreme right, which movement caused the tank trailer to veer somewhat to the left and to strike plaintiff's tractor and trailer on their left side as they were leaving the east end of the bridge, and at the same time pushing the trailer against the south side of the bridge; that plaintiff's unit stopped almost immediately following the impact; that because of the speed of defendant's unit it swerved from side to side across the bridge until it stopped beyond the west end thereof.
Plaintiff further alleges that the collision and resultant damages are due solely to the negligence of the driver of the Gibbon unit in these respects, to-wit:
That he drove upon and attempted to cross the bridge after plaintiff's unit had preempted it, well knowing that it was practically impossible for the two units to safely pass thereon; that said driver, had he been keeping a proper lookout and had not been driving at an excessive rate of speed, could have stopped his unit before entering on the bridge as, under the circumstances, was his duty; and, had he done so, the accident would have been averted.
Defendants assert lack of negligence of any character on the part of the driver of the Gibbon unit in connection with the accident; and specifically charge that plaintiff's negligence alone brought it about. Amplifying, defendants aver that the Gibbon unit, traveling at a reasonable and lawful rate of speed, reached the bridge before plaintiff did and had almost cleared it when plaintiff's unit entered thereon and collided with the Gibbon tractor; that long before plaintiff drove his unit upon the bridge, he could see, and did see that the Gibbon unit would first reach the bridge; that plaintiff knew the bridge was too narrow for both units to safely pass thereon and knew that unless he stopped his unit prior to going on the bridge, a collision would result; that notwithstanding this knowledge and these circumstances, plaintiff negligently and wantonly drove upon the bridge after it had been preempted by the driver of the Gibbon unit; that had plaintiff observed the ordinary rules of prudence for his own safety and that of others, there would not have been any accident; and that to his failure in this respect the accident solely may be accredited. In the alternative, the contributory negligence of plaintiff is pleaded in bar of any recovery by him.
Plaintiff's demand was rejected and his suit dismissed, and he appealed to this court. The lower court gave lengthy written reasons in support of its judgment.
The concrete bridge whereon the collision occurred, on account of its narrowness, has been by the Department of Highways classed as a "one-way bridge", and the customary signs reflecting the designation were posted east and west of it. Plaintiff and defendant's driver were well acquainted with the character of the bridge and its said designation as each had driven over it several times.
[1, 2] It is an elemental rule of the road that a motorist driving at a reasonable rate of speed who first enters upon a one-way bridge or roadway, enjoys a right of preemption over other motorists desiring at the time to use the bridge or roadway. It follows, as a corrollary, that if the right of preemption is interfered with by another in such manner as to cause damage to the preemptor, the offending one may be held responsible therefor.
[3, 4] In the present case, the driver of each vehicle contends that he first reached the bridge and preempted it. The plaintiff only has sued for damages resulting from the infraction of said rule. The burden, of course, devolved upon him to substantiate by a fair preponderance of testimony, the allegations relied upon for recovery. A factual question, pure and simple, was tendered. The trial judge resolved that question against the plaintiff. *Page 746 
The accident happened in broad day time. The road on each side of the bridge is practically level and straight for several hundred yards. Each driver should have seen the unit driven by the other quite a distance beyond the bridge as there was no intervening traffic or other thing to interfere with the view. Notwithstanding all this, the witnesses who claimed to have seen the collision and the vehicles immediately preceding it, are arrayed by sides in hopeless conflict as to the exact spot of the collision, and as to which unit first got on the bridge; and, we might further add, these witnesses, so far as the record discloses, with few exceptions, appear to be wholly without interest in the outcome of the case.
It so happened that there were several motor vehicles not far behind and trailing each of the units. Immediately behind the Gibbon unit, in this order, were a touring car in which there were three negroes; next a truck laden with gravel in which there were two young white men and behind this truck was a passenger car in which there were three grown white women and some children. Immediately behind plaintiff's unit were two busses followed by two automobiles.
We are convinced from the testimony that neither unit was traveling at an excessive rate of speed, immediately prior to reaching the bridge; that is, neither was going in excess of thirty-five miles per hour.
Plaintiff did not, as a witness, give a plausible and consistent version of facts transpiring immediately prior to and at the time of the collision. Firstly, he admits that although carefully watching the road ahead of him, he did not see the Gibbon unit until he (plaintiff) was about one-half way across the bridge; that at that time the Gibbon unit was 150 yards from the bridge, traveling much faster than it should have. He would have us believe that that unit covered 150 yards while his own covered only some 50 feet. Again he testified that the other driver applied the brakes when 10 feet from the bridge, at which time he (plaintiff) was about entering on the west end of it; that he had brought his own unit to a stop when it was collided with by the other near the east end of the bridge. He also did not see the several motor vehicles that immediately preceded the Gibbon unit although they were in plain view. He offers no satisfactory explanation or excuse for not seeing that which he should have seen.
Carl Q. Sims, the driver of the Gibbon unit, at the date of trial, was in the Marine Corps of the Government. His testimony was taken de bene esse prior to the trial while on furlough in the City of Shreveport, Louisiana. He testified that when he was between 100 and 150 yards from the bridge he observed plaintiff's unit beyond the bridge approximately 150 to 200 yards, and that as he (the witness), was nearer the bridge he drove forward at a normal rate of speed and entered thereon first, at which time, plaintiff was from 20 to 30 yards from its west end; that he thought he could clear the bridge before plaintiff would drive thereon, but had traveled only about one-half of its length when plaintiff did so; that he then applied his brakes forcefully and this caused the drive wheels of the tractor to veer slightly to his left and was in this position when the vehicles collided.
Plaintiff's son, Thomas, aged seventeen, was riding in the cab of his tractor at the time of the accident. He testified that he saw the Gibbon unit as it came from within a curve (which, however, is several hundred yards east of the bridge), at which time his father's unit was 150 yards west of the bridge; that the next time he saw the other unit was when, as he says, it had "jack knifed straight across the road, the tractor part", near the bridge; that at that time his father's unit was three-fourths of the way across the bridge, and immediately the collision occurred.
Murry S. Kost, a witness for plaintiff, was traveling behind him several hundred yards. He testified that when the collision occurred he had pulled his vehicle to the left of the line of motor vehicles between him and plaintiff, and saw the accident plainly. According to his testimony the two units entered upon the bridge about the same time and the locus of the collision was near the center thereof. There were two busses and two passenger cars between this witness' car and plaintiff's unit. He says that he was between 600 and 800 yards away from the bridge and, all facts considered, it is not clear to us how he could have accurately observed the vehicles as they came together. He also says that the Gibbon unit "jack-knifed" as it entered on the bridge. If, as he says, the collision *Page 747 
occurred near the center of the bridge, the two units must have entered thereon about the same time.
The two men in the gravel truck that was behind the car immediately at the rear of the Gibbon unit, testified for plaintiff. The driver of the truck testified firstly that plaintiff's unit got to the bridge first and that the collision occurred at the bridge's east end. He modified this testimony by subsequently saying that the collision occurred about three-fourths of the length of the bridge from its west end and that he was "nearly positive plaintiff's unit reached the bridge first". He further says that plaintiff's unit moved forward only two or three feet after the impact. The other man in this truck would not say which unit reached the bridge first, but believed the collision occurred near the center of the bridge, and that plaintiff's unit possibly moved forward thereafter 30 feet.
Harold Heard was driving the car that was immediately behind the Gibbon unit. There were two colored women passengers with him. They were en route to Shreveport. He is positive that the Gibbon unit entered upon the bridge when plaintiff's unit was between 50 and 90 feet west of it. He continued to follow the Gibbon unit onto the bridge and ran his own car into its rear end when the collision occurred. He says the accident occurred near the west end of the bridge. The two women passengers corroborate Heard's testimony in all essentials.
Mrs. T.A. Smith of Haynesville, Louisiana, accompanied by her mother, Mrs. Ray Kendrick, and aunt, Mrs. Clinton Crump, was driving to Shreveport the morning of the accident and witnessed it. Her car was trailing the gravel truck. She saw plaintiff's unit before it reached the bridge, and sensed that there was an accident impending as the Gibbon unit was closer to the bridge and she realized that it was going to preempt it. She testified, inter alia, as follows:
"Q. Now at the time you first saw the furniture van, which was the nearer to the bridge, the furniture van or the Earl Gibbons truck? A. The Earl Gibbons truck.
"Q. Now did the two trucks continue to approach the bridge? A. Yes.
"Q. Would you describe what happened, Mrs. Smith? A. I saw the moving van coming this way and it was kind of swaying across that middle black line and I said 'It is going to be a wreck', and kind of threw up my arms like that, and it happened in just a few minutes.
"Q. Where on the bridge did the accident happen? A. The gasoline truck was practically on the other side of the bridge going towards Shreveport, and the moving van was just getting on the bridge coming this way towards Minden.
"Q. Which of the two vehicles entered on the bridge first? A. The gasoline truck was practically off before it was hit."
Mrs. Smith further testified that the plaintiff's unit, after the collision, "ran all the way across the bridge."
Mrs. Kendrick testified that she was riding on the rear seat of the Smith car and was crocheting. The first thing that directed her attention toward the scene of the accident was when Mrs. Smith threw up her hands and said: "A wreck or something". The vehicles had collided when she looked up. She said plaintiff's unit moved forward after the collision and stopped at the end of the bridge. The testimony of Mrs. Crump is virtually the same as that of Mrs. Kendrick.
Mrs. W.S. Goode, at the date of the collision, lived on the north side of the highway in plain view of the bridge where the collision occurred. She was standing in her front yard at the time, primarily watching the Gibbon unit as it came from the west. She watched it without cessation until it entered upon the bridge and is quite certain it was near the west end thereof when plaintiff's unit collided with it.
Plaintiff's allegations as to who entered the bridge first and where thereon the accident happened are only unqualifiedly supported by himself and his son. The testimony of the truck driver is so equivocal that it carries small probative weight. Mr. Kost and the other occupant of the truck, while introduced by plaintiff, did not prove to be very good witnesses for him for the reasons mentioned in narrative of their evidence. On the other hand, Gibbon's driver, the three negroes in the car that ran into the Gibbon tank, Mrs. Smith and Mrs. Goode were strong witnesses for defendants, and were positive and definite in their versions of how and where the accident happened. And, as said before, no reason whatever appears for these witnesses to color their testimony. *Page 748 
It is contended that the damage to plaintiff's unit was so serious that it could not have traveled many feet after the collision, and as it rested at the bridge's east end it is argued that the collision must have occurred there or close to it. This argument loses its force when it is recalled that none of the tires of either unit was deflated, and the driving power (the drive shaft) of each was completely knocked out. One unit could have moved as well as the other. And, plaintiff is certain the Gibbon unit did travel several feet after the collision.
We believe the lower court correctly resolved the conflicting testimony in the case and, for the reasons assigned, the judgment appealed from is affirmed with costs.